IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MICHAEL O'GRADY,

Plaintiff,

v.

DANIEL GARRIGAN, CHARLES POCHES,
MATTHEW FOSTER, PETER HIBNER,
ROBIN KVALO, BRAD MEIXNER, KENNETH
MANTHEY, JASON STENBERG, ROBERT
BAGNELL, KEITH KLAFKE, BENJAMIN
NEUMANN, PETER WARNING, ANTHONY
BRAUNER, MICHAEL SCHUTZ, SCOTT KLICKO,
BRIAN NOLL, DAVID CLARK, MARK SMIT,
ALEXANDER AGNEW, BENJAMIN OETZMAN,
CORY MILLER, and GREGORY BISCH,

OPINION and ORDER

18-cv-368-jdp

Defendants.

---

MICHAEL O'GRADY,

Plaintiff,

v.

CITY OF PORTAGE, PORTAGE COMMUNITY
SCHOOLS, ROBIN KVALO, DANIEL GARRIGAN,
CHARLES POCHES, PETER HIBNER, MATTHEW
FOSTER, BRAD MEIXNER, JASON STENBERG,
PETER WARNING, SUSAN CONNER, and KEITH
KLAFKE,

OPINION and ORDER

18-cv-582-jdp

Defendants.

---

MICHAEL O'GRADY,

                Plaintiff,

      v.

CITY OF PORTAGE, PORTAGE COMMUNITY
SCHOOLS, KEVIN TODRYK, MARIE MOE, and
DAWN WILCOX,

                Defendants.

OPINION and ORDER

19-cv-515-jdp

---

MICHAEL O'GRADY,

                Plaintiff,

      v.

COLUMBIA COUNTY, CITY OF PORTAGE,
PORTAGE COMMUNITY SCHOOLS, VERN GOVE,
JOSEPH RUF, SHAWN MURPHY, MATHEW
FOSTER, CHARLES POCHES, MARK HAZELBAKER,
ANYTIME FITNESS CORP., ANDREW GUNDLACH,
MARK SMIT, BENJAMIN OETZMAN, ALEXANDER
AGNEW, DENNIS RICHARDS, MAX
JENATSCHECK, and CHARLES CHURCH,

                Defendants.

OPINION and ORDER

19-cv-518-jdp

---

Plaintiff Michael O'Grady claims that local government entities and individual defendants have violated his constitutional rights in various ways. These four cases started out with O'Grady and additional plaintiffs suing multiple defendants associated with local law enforcement, a school district, and other government entities. Now, after several rounds of motions, only O'Grady's claims remain, and the court has organized O'Grady's claims into the four cases as follows.

In the '368 and '582 cases, O'Grady contends that defendants associated with Portage Community School District, Portage Police Department, Marquette County Sheriff's Office,

and Columbia County Sheriff's Office violated his constitutional rights by organizing and executing a canine drug search at Portage High School.

In the '515 case, O'Grady challenges the school district's parking policy and a ticket that he received when his daughter parked his car at the high school without a visible permit.

In the '518 case, O'Grady contends that numerous local government entities and officials retaliated against him after he filed the '368 and '582 cases.

Defendants in all four cases have filed motions for summary judgment. As explained below, none of O'Grady's claims survive summary judgment because, in each case, he failed to respond properly to defendants' proposed facts, did not submit evidence to support his claims, and made arguments without factual or legal support. Defendants' motions will be granted, and these cases will be closed.

Before turning to the summary judgment motions, I'll resolve the outstanding motions filed by O'Grady. O'Grady filed several motions requesting that that the court stay a decision on defendants' summary judgment motions so that he can conduct additional depositions and obtain more discovery. Those motions will be denied. The '515 and '518 cases have been pending for more than a year, and the '368 and '582 cases have been pending for more than two years. O'Grady does not provide a good explanation for why he has failed to collect the evidence he needs. Nor does O'Grady explain what evidence he thinks he would obtain through additional discovery or how the evidence would alter the outcome of these cases. As explained below, most of O'Grady's claims have no basis in fact or law, and I am not persuaded that additional discovery would change the outcome of any of his claims.

O'Grady also filed two discovery motions in the '518 case. First, he filed a motion to compel Mark Hazelbaker to provide additional discovery responses. That motion will be denied

3

because O'Grady's requests to Hazelbaker were captioned in a case to which Hazelbaker is not a party, and O'Grady failed to respond when Hazelbaker sought clarification about the requests. And O'Grady's discovery requests go beyond the scope of the '518 case. Second, O'Grady filed a motion to shorten defendants' deadline for responding to discovery requests. That motion will be denied because O'Grady provided no good reason why defendants should receive less than two weeks to respond to his discovery requests.

## UNDISPUTED FACTS

O'Grady did not follow this court's summary judgment procedures, and for the most part he has failed to raise any genuine factual disputes. O'Grady failed to respond to defendants' proposed findings of fact in the '515 case. In the other cases, O'Grady objected to most of defendants' proposed findings of fact. I have reviewed and considered all of his objections, but many of O'Grady's objections are incoherent, argumentative, unsupported by admissible evidence, or directly contradictory to his own deposition testimony. I have construed the facts in the light most favorable to him and have drawn reasonable inferences in his favor where there was some admissible evidence in the record to support his version of events. *See Perez v. K & B Transportation, Inc.,* 967 F.3d 651, 653 (7th Cir. 2020) (facts must be construed in light most favorable to nonmoving party at summary judgment).

I draw the following facts from the parties' proposed findings of fact and evidence in the record. The facts are undisputed unless otherwise noted.

**A.  The search at Portage High School ('368 and '582 cases)**

**1.  Portage Community School District's parking and search policies**

Since at least 2017, Portage Community School District has had a "student vehicles" policy that requires students to purchase and display a valid parking permit if they want to park on district property. The policy states, in part:

> Vehicles parked on school property are subject to search including drug-dog searches.
>
> The student driver and his/her parent must register the vehicle in the office each school year.
>
> Vehicles must properly display a current parking permit.
>
> * * *
>
> Parking lots are subject to unannounced searches. By choosing to park a vehicle on school grounds, permission is given to search a vehicle by school personnel or police/police drug dogs.

The district also has a policy, policy 5771, relating to searches and seizures of students, lockers, desks, and student vehicles. Policy 5771 states, in part:

> Permission of a student to bring a vehicle on school property shall be conditioned upon written consent of the search of the vehicle and all containers inside the vehicle by a school administrator with reasonable suspicion to believe the search will produce evidence of a violation of particular law, a school rule, or a condition that endangers the safety and health of the student driver or others.

The policy also states that the district administrator may request that law enforcement conduct drug searches with drug dogs. The policy does not require that the student be present while law enforcement conduct a search of the student's vehicle based on an indication from a drug dog.

### 2. Portage High School parking lot

Portage High School is subject to Portage Community School District's parking and search policies. Portage High School's parking lot is restricted to those students who have obtained a parking permit, and the lot has signs stating that parking permits are required. Before a student is issued a parking permit to park at the high school, the student and parent must fill out a student vehicle registration form. The registration form contains the following language about searches:

> Student vehicles parked on high school property are subject to search without notice. By choosing to park a vehicle on school property you and/or your parent(s) have given permission to search your vehicle by school personnel, police officers, and/or their K9 officer.

The City of Portage and Portage Police Department enforce the parking permit requirement at Portage High School, pursuant to Wis. Stat. § 118.105 and City of Portage Ordinance § 50-81. The statute authorizes school boards to request that local authorities control motor vehicle traffic on school premises. The ordinance states that parking on district property is by permit only.

### 3. Drug search at Portage High School

In 2017, O'Grady had three daughters who attended Portage High School: Isabelle, Ashley, and M.O. O'Grady's oldest daughter, Isabelle, drove O'Grady's Toyota to school. At the beginning of the school year, O'Grady filled out a registration form so that Isabelle could drive to school and park in Portage High School's parking lot. (O'Grady says that the registration form he signed did not say anything about canine drug searches, but he has failed to submit any evidence to support this assertion. The district has shown that the policy and registration forms were in place in 2017.)

In November 2017, defendant Robin Kvalo, the principal of Portage High School, contacted defendant Daniel Garrigan, a detective lieutenant at Portage Police Department. Kvalo talked to Garrigan about having the police department conduct a canine sniff for drugs at the high school. Garrigan contacted Columbia County Sheriff's Office, Marquette County Sheriff's Office, and the Lodi chief of police to request assistance from their departments with a canine sniff at Portage High School.

The canine sniff for drugs took place at the high school on December 19, 2017. Principal Kvalo notified school staff that the high school would be placed on an administrative hold during the canine sniff. During an administrative hold, students and staff are required to stay in their assigned classrooms. School staff notified students that an administrative hold was in place. O'Grady's daughters—Isabelle, Ashley, and M.O.—were at school on December 19. Isabelle was a senior, and she had been through approximately 30 administrative holds at school since 2011. The December 2017 hold was similar to other administrative holds that Isabelle had experienced. The hold lasted approximately one class period, just over an hour, and there was no deviation from normal classroom activities during the administrative hold. (O'Grady says that the administrative hold lasted the entire school day, but he cites no evidence to support his assertion.)

On the morning of December 19, law enforcement from three agencies (Portage Police Department, Marquette County Sheriff's Office, and Columbia County Sheriff's Office) met in the high school parking lot. Detective Lieutenant Garrigan gave each officer and deputy an assignment for the day. Some officers were instructed to accompany a canine handler to sniff lockers in the high school, and others were instructed to accompany a canine handler to sniff areas of the high school parking lot. Garrigan did not direct any law enforcement officers to

search or sniff, or to not search or sniff, any specific lockers or vehicles during the canine sniff. All vehicles and lockers that were alerted to by a canine sniff were searched by law enforcement.

Defendant Brian Noll, an officer with Marquette County Sheriff's Office, was assigned to work with his K9 partner, Blackjack, to sniff student lockers and restrooms in the high school. Noll and Blackjack had worked together since November 2015. Blackjack had received extensive training, and he was certified in patrol and scent functions. He was certified specifically to detect drugs, including cocaine, heroin, marijuana, methamphetamine, and their derivatives. (O'Grady says that Blackjack's certifications are false, but he cites no evidence to support his assertion.)

After Noll conducted locker sniffs inside the high school with Blackjack, he went to the parking lot to assist with vehicle sniffs. Blackjack alerted to four vehicles, including O'Grady's Toyota that Isabelle had driven to school that day. (Noll says that he did not know who owned or drove any of the vehicles that Blackjack alerted to. O'Grady responds that Noll likely figured out who owned the Toyota because there was a parking permit with Isabelle's name hanging from the rearview mirror.) Noll told school staff which vehicles had been alerted to.

School staff notified defendant Jason Stenberg, a detective with Portage Police Department, that a vehicle registered to Isabelle O'Grady had been indicated on for narcotics. Stenberg had been assigned to interview students whose vehicles or lockers were indicated in the canine sniff. All students whose vehicles or lockers were alerted on and searched were interviewed by law enforcement. Stenberg was in plain clothes and was not uniformed that day. Stenberg and a school representative went to Isabelle's class and asked her to come with them. Stenberg told Isabelle that there was a positive sniff on her vehicle, and he asked her to retrieve her keys from her locker so that law enforcement could search the vehicle. Isabelle

cooperated with Stenberg, gave him the keys, and did not object to the vehicle being searched. Stenberg gave the keys to a school official assisting the search team. Stenberg then escorted Isabelle to the school administrative offices where he interviewed her in the presence of Principal Kvalo.

Stenberg told Isabelle that she was not under arrest, that she was free to go, and that Kvalo was sitting in on the conversation pursuant to school protocol. Stenberg asked Isabelle if she wanted to continue the conversation, and she consented. Isabelle denied using drugs and told Stenberg that she used the Toyota to drive to school and give rides to her friends. She said that her friends sometimes left personal belongings in the vehicle. Stenberg told Isabelle that if the police found contraband in the car, she would be able to speak to her father before being questioned about it. Stenberg's interview with Isabelle lasted less than ten minutes.

After Stenberg spoke with Isabelle, Ashley O'Grady was brought to the administrative offices by school staff. Stenberg interviewed Ashley in the presence of defendant Brad Meixner, dean of students at the high school. Stenberg told Ashley that she was not under arrest, that she did not have to talk to him, and that she was free to leave. Ashley continued the conversation, which lasted less than ten minutes. Ashley denied knowing why a dog would alert on the Toyota.

Meanwhile, all of the vehicles in the parking lot that had been alerted on by the drug dogs were searched. Some students were present in the parking lot when law enforcement searched their vehicles, and other students were not present. (Defendants do not explain why some students were present and others were not. O'Grady says that his children were not permitted to watch the search of their vehicle because they are students of color. He says that only white students were permitted to watch the searches of their vehicles. But O'Grady

submits no evidence to support his assertion.) Defendant Peter Warning, a Portage police officer, was one of the officers assigned to search the vehicles. Warning searched O'Grady's Toyota after receiving Isabelle's keys. (Warning says that he did not know the identity of the owner of the Toyota before or during his search, but O'Grady says Warning likely figured out who the owner was based on the parking permit and the name O'Grady on Isabelle's key ring.) Warning did not find any drugs or contraband in the vehicle. Later that day, Stenberg left a voicemail message with O'Grady, informing him that the Toyota had been alerted on and that he had spoken with Isabelle and Ashley regarding the canine sniff.

### 4. O'Grady's activities at the high school

In the afternoon of December 19, 2017, after the drug search and administrative hold were finished, O'Grady came to the high school. When he arrived, he did not know about the drug search. He had been receiving automated telephone calls about a low or depleted lunch money account, and he wanted to talk to school lunch staff to resolve the issue. O'Grady entered the building and saw defendant Meixner, dean of students. O'Grady said that he was getting automated telephone calls daily regarding the school lunch account and that he needed to see his daughters regarding the account. Prior to this date, O'Grady had a history of coming to the high school and calling teachers during school hours. (O'Grady says that he came to the high school to discuss his children's education, materials, and homework. Defendants say that O'Grady acted in a harassing and demanding manner toward staff.) Meixner asked O'Grady to follow him to his office to have a discussion. O'Grady followed Meixner to the school administrative offices, but O'Grady continued to demand that he see his children. The two began arguing. Meixner directed O'Grady into his personal office where he forcefully shut the door, raised his voice, and told O'Grady that he was tired of him coming into the school and

10

intimidating staff. (O'Grady says that Meixner stood in front of the door, yelled, and jabbed his finger toward O'Grady's face. Meixner says that he did not touch O'Grady, threaten to touch him, or get close to touching him.) Meixner then left his office and walked to another office where defendant Keith Klafke, assistant chief of Portage Police Department, was speaking to the parent of another student. (O'Grady says that Meixner was insulting him loudly at this time.)

Klafke told O'Grady that if he had questions regarding the search of his daughters' vehicle, he should contact the police department. When O'Grady said that he needed to see his daughters about a lunch account, Klafke said that O'Grady's daughters would not be released for that reason, and that that O'Grady could speak to his daughters about the lunch account at the end of the school session at 3:10 p.m. O'Grady then left the office to go to the cafeteria commons area, where he spoke to lunch room staff about the account and automated calls.

After O'Grady left, Klafke told Meixner and another school official that they should release O'Grady's daughters from class so that O'Grady could speak with them. Isabelle and Ashley then met O'Grady in the cafeteria area and talked about the lunch account. (The parties dispute whether Isabelle and Ashley were pulled out of class to speak with O'Grady, or whether their classes had ended, and the girls bumped into O'Grady in the cafeteria area. The dispute is immaterial.) After speaking with his daughters, O'Grady left the school premises.

## B. O'Grady's March 2018 parking ticket (the '515 case)

Approximately three months after the search, on March 14, 2018, O'Grady's daughter Isabelle drove to school and parked the Toyota in Portage High School's parking lot. Defendant Kevin Todryk, a community resource officer at Portage Police Department, was conducting

parking enforcement that day. He ticketed approximately 15 vehicles in the high school lot for failure to display a proper parking permit. He did not conduct any record checks for the vehicles that he ticketed. Todryk issued a $5 parking ticket to O'Grady's vehicle, because there was no parking permit displayed in the rearview mirror or otherwise visible in the vehicle. Todryk did not recognize the vehicle and did not know who owned the vehicle when he issued the parking ticket. (O'Grady attempts to dispute this, but he sites no evidence to support his assertions.) The ticket stated that if O'Grady did not pay the ticket within 48 hours, a parking citation would be issued.

On March 16, O'Grady went to the City of Portage Joint Municipal Court and spoke with defendant Dawn Wilcox, a court clerk, about the ticket. O'Grady gave Wilcox a $5 check, payable to the police department, and a "demand for trial" letter in which he disputed the ticket. Wilcox told O'Grady that he would have a trial only if a citation was issued. But if O'Grady paid the ticket, the matter would not proceed to court. Wilcox also told O'Grady that the $5 payment was not owed to the municipal court, but that she would be happy to deliver the $5 payment to the police department for O'Grady. Wilcox asked O'Grady if he wanted to pay the $5, and he said yes. Wilcox accepted O'Grady's letter and check.

Defendant Marie Moe, the city clerk, noticed that Wilcox was having an extended conversation with O'Grady. Moe offered her assistance, but O'Grady told Moe repeatedly that he was not there to speak with her. O'Grady wanted Wilcox to sign a copy of the demand letter that he had delivered, but Wilcox refused to do so, stating that it was against policy. Moe also told O'Grady that Wilcox could not sign the documents. Wilcox later delivered the $5 payment from O'Grady to the police department. (O'Grady says that Wilcox and Moe are lying and that they tampered with documents, but he does not say how they tampered with documents or

12

which of their statements are false. He also provides no evidence to support his assertions.)
The city did not respond to O'Grady's letter and did not schedule a trial.

## C. Background to O'Grady's retaliation claims (the '518 case)

### 1. O'Grady's filing of the previous lawsuits

In May 2018, O'Grady and several other individuals filed the '368 lawsuit, suing more
than 40 defendants associated with numerous local government entities. He filed the '582 case
in July 2018. In both cases, he challenged the December 2017 drug search at Portage High
School and the March 2018 parking ticket he received, among several other incidents and
government policies. As the result of several rounds of motions, the court dismissed the claims
of the other plaintiffs and organized the claims into the four cases now before the court.

### 2. State court cases against O'Grady

Between June and September 2018, various government entities and individuals
initiated proceedings against O'Grady for harassment. O'Grady's claims in the '518 case are
that defendants took these actions to prevent him from exercising his rights to litigate his other
pending federal suits.

#### i. City of Portage injunction petition

On June 25, 2018, the City of Portage and more than a dozen city employees filed a
petition for a temporary restraining order and motion for injunction against O'Grady in
Columbia County circuit court (18CV201). The city petitioners alleged that, starting in at least
September 2014, O'Grady had issued meritless personal attacks and accusations against city
employees, had pursued frivolous complaints, legal actions, and John Doe petitions against the
city and city employees, and had made voluminous open records requests that he failed to pick
up. The city petitioners argued that O'Grady's actions had no legitimate purpose, and that his

13

actions were solely for hindering, vexing, and harassing city staff and officials. Defendant Shawn Murphy signed the petition in his capacity as city administrator and as authorized by the common council.

After holding an evidentiary hearing on the petition, the circuit court issued an injunction against O'Grady on December 19, 2018. Dkt. 209-1. The court found that O'Grady had repeatedly harassed more than a dozen city employees and had filed baseless complaints against numerous individuals. O'Grady had filed numerous complaints with the city in which he had accused city employees of terrorism, romantic affairs, embezzlement, wrongful killings, attempted murder, conspiracy, white supremacy, pedophilia, and criminal racketeering. The circuit court found that O'Grady had made eight open records requests, several which involved large amounts of records, but that he had picked up only one set of the records. O'Grady's actions had caused personal and professional disruption, distraction, and stress for many city employees, and the city had incurred more than $20,000 in costs because of O'Grady's "one-man crusade." *Id.* at 33.

The court concluded that, although "[t]here is no doubt that the goal of rooting out corruption in a small city in Wisconsin is a legitimate purpose," "continually trotting out the same allegations over and over and over again is not a legitimate purpose." *Id.* at 34. The court ordered O'Grady to "cease or avoid harassment of, or harassing behaviors directed at" the city petitioners for a period of four years. *Id.* at 36. The court also enjoined O'Grady from filing or commencing a lawsuit without the approval of a licensed attorney; making oral requests for public records; writing to any city employee unless that communication was signed and submitted by a licensed attorney or O'Grady was requesting forms or fulfilling obligations to the city; contacting or being near detective lieutenant Garrigan or Garrigan's immediate family;

14

and entering, or causing any person other than an attorney or law enforcement officer to enter, the residential premises of any city employee or elected or appointed official unless invited there by the employee. The court concluded that the injunction was "the least restrictive means possible" to allow O'Grady to express his First Amendment right to petition for the redress of grievances while still protecting the city and its employees. *Id.* at 38.

On April 30, 2020, the Wisconsin Court of Appeals affirmed the injunction. The court of appeals stated that O'Grady "cannot shield his harassing conduct from regulation by labeling it" as serving a legitimate purpose. Dkt. 209-3.

### ii. Benjamin Oetzman's injunction petition

In June 2018, defendant Benjamin Oetzman, detective sergeant with Columbia County Sheriff's Office, also requested an injunction against O'Grady in Columbia County circuit court (18CV181). Oetzman alleged that O'Grady had been harassing him at a local gym and while attempting to serve papers on Oetzman. Defendant Charles Church, a court commissioner, issued a temporary restraining order based on the allegations in the petitions. The case was later transferred to a circuit court judge, who denied the petition for an injunction.

### iii. Columbia County and Columbia County Sheriff's Office's injunction petition

On August 8, 2018, Columbia County and Columbia County Sheriff's Office filed a petition for a temporary restraining order and motion for injunction against O'Grady in Columbia County circuit court (18CV230), through defendant attorney Mark Hazelbaker. The county petitioners accused O'Grady of harassing county employees by filing frivolous lawsuits and petitioning for frivolous John Doe investigations. The county petitioners alleged that O'Grady and others had trespassed and harassed the petitioners while attempting to serve

15

lawsuits, despite the petitioners' counsel having accepted service of all defendants. The petitioners also accused O'Grady and the other respondents of stalking the sheriff and sheriff's office employees.

On October 17, 2018, after a hearing on the county's petition, the circuit court issued an injunction against O'Grady. Dkt. 195-3. The court found that O'Grady had engaged in acts with intent to harass or intimidate the petitioners, and the court ordered O'Grady to cease certain harassing behaviors or actions. The court ordered that O'Grady would need to arrange for service of process through Columbia County corporation counsel if he intended to file additional lawsuits.

### iv. School district's injunction petition

The Portage Community School District filed a motion for an injunction against O'Grady in Columbia County circuit court (19CV41), through attorney Hazelbaker. The school district petitioners alleged that O'Grady had been harassing district employees by pursuing frivolous complaints and legal actions against the district, making false accusations against district employees, filing frivolous petitions for John Doe investigations of district employees, and making multiple open records requests but failing to pick up the documents.

The circuit court issued an injunction against O'Grady on July 26, 2019. The court found that O'Grady had cost the District $127,000 over the course of six years, "which by any calculation is absurd." Dkt. 195-7, at 8. The court found that there were reasonable grounds to find that O'Grady engaged in acts with intent to harass or intimidate the district, and that O'Grady's actions had no expressive or other legitimate purpose. The court ordered that O'Grady not engage in certain harassing actions and cease or avoid harassment of the district.

### v. State criminal investigation

In September 2018, a special prosecutor from Wisconsin Department of Justice filed a criminal complaint against O'Grady in Columbia County circuit court (18CF419). The complaint accused O'Grady of multiple counts of stalking, false swearing, and simulation of legal process. The criminal case is still pending.


ANALYSIS

## A. Portage High School drug search

In the '368 and '582 cases, O'Grady challenges Portage Community School District's search policies and the December 2017 drug search at Portage High School. His specific claims are unfocused and somewhat difficult to discern, but I understand O'Grady to be claiming that: (1) he was seized unlawfully; (2) his vehicle was searched without reasonable suspicion or probable cause; and (3) defendants interfered with his parental rights by seizing his children and targeting them to be searched. I address each of O'Grady's claims and the parties' arguments below.

### 1. Alleged seizure of O'Grady

The Fourth Amendment protects against unreasonable searches and seizures. O'Grady contends that he was seized in violation of the Fourth Amendment when he entered Portage High School on December 19, 2017. But O'Grady has not shown that he was seized at all. A Fourth Amendment seizure takes place if, considering all the circumstances surrounding the incident, a reasonable person would not believe that he was free to leave. *United States v. Shields*, 789 F.3d 733, 743 (7th Cir. 2015). No reasonable person in O'Grady's position would have thought that he was being confined at the high school at any time during O'Grady's visit.

17

O'Grady entered the high school of his own volition. He was not apprehended by law enforcement or school personnel. He spoke with defendant Meixner, dean of students, and willingly followed Meixner into the administrative offices. In the offices, O'Grady spoke with Meixner and defendant Officer Klafke. O'Grady then left the offices when he chose to. O'Grady walked freely to the cafeteria of the high school and spoke with lunch staff and his daughters, and then O'Grady left the premises. At no point was O'Grady detained or prohibited from leaving by law enforcement or school staff.

O'Grady argues that he was "seized" because an administrative hold was in place when he arrived at the high school. But the administrative hold was over by the time O'Grady arrived, and it is not clear that the administrative hold would have applied to him anyway. O'Grady says that he was seized when Meixner lost his temper in the administrative offices. But O'Grady's interaction with Meixner was brief, Meixner did not detain O'Grady, and O'Grady was permitted to leave Meixner's office. O'Grady also argues that he was seized when Klafke told O'Grady that he could not see his daughters. But O'Grady admits that Klafke did not tell O'Grady that he was under arrest or that he could not leave, did not prevent O'Grady from leaving, did not speak to O'Grady in a threatening manner, did not draw a weapon on O'Grady, and did not touch O'Grady. *See United States v. Smith*, 794 F.3d 681, 684 (7th Cir. 2015) (not every interaction with a police officer is a seizure).

In short, O'Grady has presented no evidence suggesting that he was seized within the meaning of the Fourth Amendment when he was at Portage High School in December 2017. Accordingly, defendants are entitled to summary judgment on this claim.

## 2.  Search of O'Grady's vehicle

O'Grady contends that defendants violated his Fourth Amendment rights by searching his vehicle in the high school parking lot without probable cause or a search warrant. This claim fails for two reasons.

First, defendants had probable cause to search O'Grady's vehicle based on a canine's alert on the vehicle. The undisputed evidence shows that the K9 Blackjack alerted on O'Grady's vehicle, and a certified drug dog's genuine alert on a car gives an officer probable cause to search the car. *See United States v. Simon*, 937 F.3d 820, 833 (7th Cir. 2019); *United States v. Scott*, 516 F.3d 587, 589 (7th Cir. 2008).

O'Grady argues that defendants violated the Fourth Amendment by using the drug dogs at the school. He argues that Marquette and Columbia County officers had no jurisdiction under state law in the City of Portage or at the high school. But state jurisdiction is irrelevant to the Fourth Amendment analysis. *See Vargas v. Cook Cty. Sheriff's Merit Bd.*, 952 F.3d 871, 875 (7th Cir. 2020) (failure to comply with state law not a constitutional violation). And, in any event, O'Grady is incorrect. Under state law, police agencies, like Portage Police Department, can request assistance from other law enforcement agencies. *See* Wis. Stat. § 66.0313(2).

Next, O' Grady argues that no school district policy authorizes a high school *principal* to ask law enforcement to conduct a drug sniff, and that district policy 5771 permits canine searches on campus only at the request of the district administrator. But this argument is not supported by the evidence. The school officials and law enforcement conducted the search pursuant to the school district's policies that "[v]ehicles parked on school property are subject to search, including drug-dog searches"; "[p]arking lots are subject to unannounced searches";

and "[b]y choosing to park a vehicle on school grounds, permission is given to search a vehicle by school personnel or police/police drug dogs."

Regardless, whether there was a school district policy authorizing the drug sniff is irrelevant to the Fourth Amendment analysis. Police officers need no articulable reason to call in a drug-sniffing dog if doing so does not otherwise invade a person's legitimate interest in privacy. *See United States v. Jacobsen*, 466 U.S. 109, 123–24 (1984); *United States v. Place*, 462 U.S. 696, 707 (1983). And a drug sniff that occurs in a public space does not invade a legitimate expectation of privacy. *United States v. Eyman*n, 962 F.3d 273, 288 (7th Cir. 2020) (drug sniff of airplane on open runway does not violate legitimate privacy interest). Because O'Grady's vehicle was parked in the high school parking lot, he had no legitimate privacy interest that was invaded by the drug sniff.

O'Grady argues that even if the drug sniff was constitutional, Backjack's alert did not create probable cause because Blackjack's certifications are false, and his alerts are unreliable. But O'Grady has no evidence to support these arguments. The only evidence in the record as to Blackjack's training shows that Blackjack was properly certified. O'Grady also argues that Blackjack's alert must have been false because no drugs or contraband were found in the vehicle. But probable cause is not a retrospective, outcome-based standard. *Id.* The absence of drugs in the vehicle does not undermine the probable cause to search it for drugs.

The second reason O'Grady's Fourth Amendment search claim fails is that both O'Grady and his daughter consented to the search of the vehicle. Law enforcement does not need a warrant or probable cause to search a vehicle if the vehicle owner has consented. *Fernandez v. California*, 571 U.S. 292, 306 (2014); *United States v. Terry*, 915 F.3d 1141, 1144 (7th Cir. 2019). O'Grady consented to the search when he signed the vehicle registration form

20

that contained clear language from the school's parking policy that vehicles are subject to search by school personnel and law enforcement, including K9 officers. Defendants' evidence shows that the registration form containing the search language was the form used in 2017, and O'Grady has no evidence to support his allegation that he signed a different form. He also has no evidence that he did not understand the form or that he was coerced into signing the form. *See United States v. Barnett*, 415 F.3d 690, 691 (7th Cir. 2005) (knowing and intelligent waiver of Fourth Amendment rights is valid).

Isabelle gave consent to search the vehicle when she chose to park on school premises and when she voluntarily gave her keys to the vehicle to defendant Stenberg. At the time of the search, Isabelle was exercising control over the vehicle. She had driven the vehicle to school, referred to the vehicle as her own, and had the keys to the vehicle in her locker. A third party like Isabelle who has actual or apparent control over another's property can authorize law enforcement to access the property. *See United States v. Jackson*, 598 F.3d 340, 346 (7th Cir. 2010) ("The consent of one who possesses common authority, or who appears to have common authority, over premises or effects is valid as against the absent, nonconsenting person with whom that authority is shared, because it is no doubt reasonable for the police to conduct a search once they have been permitted to do so.") (internal quotation marks and citations omitted); *United States v. Basinski*, 226 F.3d 829, 834 (7th Cir. 2000).

In sum, the drug sniff did not violate the Fourth Amendment, and the search of O'Grady's car was supported by probable cause and consent. Defendants are entitled to summary judgment on O'Grady's search claim.

### 3.  O'Grady's parental rights

Defendants argue that O'Grady is attempting to assert claims based on violations of his children's constitutional rights. As I explained in a previous decision, O'Grady cannot bring claims on behalf of his children. Dkt. 135 in 18-cv-368-jdp; Dkt. 53 in 18-cv-582. *See also Ray v. Maher*, 662 F.3d 770, 773 (7th Cir. 2011) (§ 1983 claims are personal to the injured party). O'Grady can bring claims challenging interference with his parental rights. A parent's interest in the care, custody, and control of their children is a fundamental liberty interest protected by the due process clause of the Fourteenth Amendment. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Xiong v. Wagner*, 700 F.3d 282, 291 (7th Cir. 2012). Government officials would, for examples, interfere with a parent's protected rights by removing the child from the parent's home or taking actions specifically aimed at separating the parent from the child or interfering with the parental relationship. *Russ v. Watts*, 414 F.3d 783, 790 (7th Cir. 2005).

I understand O'Grady to be claiming that defendants interfered with his parental rights by imposing the administrative hold, targeting his children, conducting the drug sniff and search, and refusing to produce his children when he demanded to talk to them. The facts do not support O'Grady's claims.

The administrative hold did not interfere with O'Grady's parental rights in any way. School officials have authority to control the general movement and location of students within a school without violating any constitutional rights. *See Wallace by Wallace v. Batavia Sch. Dist. 101*, 68 F.3d 1010, 1013 (7th Cir. 1995). And teachers and administrators are entitled to take reasonable actions to "maintain order and discipline." *Id.* Defendant Kvalo instituted the administrative hold to prevent students from wandering around and removing items from their lockers while law enforcement conducted a drug sniff at the high school. The administrative

22

hold was in place for just over one class period and it did not alter normal classroom activities. By permitting his children to attend school, O'Grady delegated this much authority to school officials. *See United States v. Hollingsworth*, 495 F.3d 795, 801 (7th Cir. 2007).

There is also no evidence showing that defendants targeted O'Grady's children because of their color or because of their association with O'Grady. The evidence shows that O'Grady's vehicle was alerted on by a K9 officer, and that all vehicles that were alerted on by drug dogs were searched. In addition, all students whose vehicles were searched were interviewed by law enforcement. O'Grady's children were not treated differently than other students at the school.

The interviews of the O'Grady's children also did not interfere with O'Grady's parental rights. The interviews of O'Grady's daughters were brief, voluntary, and were not coercive. *See Hollingsworth*, 495 F.3d at 795 (no violation of parent's rights when student was interviewed for less than half hour and without any "coercive interrogation techniques").

Finally, O'Grady's suggestion that defendants violated his parental rights by refusing to produce his children on demand is frivolous. O'Grady demanded that his children be released from class to talk with him about a lunch money dispute. Although Meixner and Klafke resisted initially, O'Grady was able to talk to his daughters within minutes of his initial demand. O'Grady has no constitutional right to enter the high school and expect that his children will be produced immediately regardless what else is happening at the school.

4. ***Monell* claims against City of Portage, Columbia County, and Portage Community School District**

Defendants also move for summary judgment on O'Grady's claims that the city, county, and school district are liable for violating his constitutional rights in connection with the drug search at Portage High School. Because O'Grady has failed to establish any constitutional

violation, his *Monell* claims automatically fail. *See Wilson v. Warren Cty., Illinois*, 830 F.3d 464, 470 (7th Cir. 2016) (claim against municipality fails if there is no underlying constitutional violation). Therefore, defendants are entitled to summary judgment on these claims as well.

## B. Portage Community School District's parking permit policy

In the '515 case, O'Grady challenges the Portage Community School District's parking permit policy and the March 2018 ticket that defendant Office Todryk issued to O'Grady's vehicle under that policy. The policy requires any student who parks on district property to register the vehicle, pay a fee, and display a valid parking permit. O'Grady contends that the policy is unconstitutional because: (1) it is illegal for the district to charge a fee and issue a permit that is enforceable by the City of Portage; (2) he was entitled to a trial on the parking ticket; and (3) it is unconstitutional to waive Fourth Amendment rights and consent to a search of the vehicle by applying for and displaying permit.

I have already rejected O'Grady's third argument regarding his Fourth Amendment rights in my discussion of the '368 and '582 cases above. A knowing and intelligent waiver of Fourth Amendment rights is valid and enforceable. *United States v. Barnett*, 415 F.3d 690, 691 (7th Cir. 2005). A student who applies for a parking permit and parks in the school parking lot has knowingly and voluntarily waived any Fourth Amendment rights that otherwise would have prohibited law enforcement and school officials from searching the student's vehicle.

O'Grady's first argument, that the district cannot charge a parking fee and issue a permit that is enforceable by the city, does not seem to implicate O'Grady's federal constitutional rights. But in any event, the district's authority to enact the parking policy comes from Wis. Stat. § 118.105. That statute gives Wisconsin school districts the statutory authority to request that local law enforcement control motor vehicle traffic on school premises. Pursuant to Wis.

24

Stat. § 118.105, the City of Portage enacted Ordinance § 50-81, which codifies the district's parking permit policy.

That leaves O'Grady's argument that the parking policy violates his right to due process because he was deprived of a trial and opportunity to contest the ticket. This claim also fails, because the evidence shows that O'Grady chose to forgo additional process that was available. O'Grady was told that if he paid the ticket, he would not have an opportunity to contest the ticket at a trial. He paid the ticket anyway, voluntarily and knowingly foreclosing his right to additional process.

O'Grady raises several additional arguments in his brief about the validity of the ticket, but none of his arguments implicate the constitution or are supported by any evidence. Therefore, defendants are entitled to summary judgment on all of O'Grady's claims in this case.

## C. Retaliation claims

In the '518 case, O'Grady contends that defendants retaliated against him for filing the '368 and '582 lawsuits by: (1) filing injunctions against him in state court; (2) commencing a criminal investigation against him; and (3) conducting surveillance of him. O'Grady has submitted no evidence showing that defendants conducted targeted surveillance of him. As for the criminal investigation, the evidence shows that the investigation was opened by the state Department of Justice, not defendants. So O'Grady cannot maintain a retaliation claim based on surveillance or the criminal investigation.

To succeed on a retaliation claim based on the injunction actions filed against him in state court, O'Grady would have to show that: (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the

defendants' decision to file the injunction actions. *See Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020). If O'Grady could satisfy these elements, the burden would shift to the defendants to show that they would have filed the injunction petitions regardless of O'Grady's protected activity. *Manuel v. Nalley*, 966 F.3d 678, 680 (7th Cir. 2020). O'Grady would then have to demonstrate that defendants' proffered reason was pretextual or dishonest. *Id.*

O'Grady's retaliation claims fail because he cannot show that any defendant filed an injunction petitions against him because he engaged in conduct protected by the First Amendment. O'Grady has a protected right to file legitimate lawsuits against government entities and officials. The evidence shows that if O'Grady had simply filed lawsuits challenging government decisions that caused him actual injury, defendants would not have filed the injunction petitions. But that is not what O'Grady did. Three Wisconsin circuit court judges, after three separate evidentiary hearings, found that O'Grady's actions were harassing and unlawful, and that defendants filed injunction petitions because of O'Grady's ongoing and relentless pattern of harassing government employees through a variety of means. *See* Dkt. 195-3; Dkt. 195-7; Dkt. 209-1. Likewise, the Wisconsin Court of Appeals found that O'Grady's harassing behavior did not serve a legitimate purpose. Dkt. 209-3.

O'Grady's arguments that the city, county, and school district defendants acted in retaliation for his engaging in conduct that was protected by the First Amendment are precluded by these state courts' findings. Under Wisconsin law, an issue cannot be relitigated if: (1) the issue in question was actually litigated, decided, and essential to a judgment in a prior action; and (2) preclusion would be fundamentally fair. *In re Estate of Rille ex rel. Rille*, 2007 WI 36, ¶ 36, 300 Wis. 2d 1, 19, 728 N.W.2d 693, 702. Relevant factors for the latter inquiry include whether the party opposing preclusion lacked an adequate incentive to litigate

the issue in the earlier proceeding, whether the earlier proceeding was of significantly lower quality, whether the parties' burdens have shifted since the earlier proceeding, and whether the party opposing preclusion could have obtained review of the decision. *Aldrich v. Labor & Indus. Review Comm'n,* 2012 WI 53, ¶ 110, 341 Wis. 2d 36, 76, 814 N.W.2d 433, 453. All of the factors weigh in favor of preclusion in this case.

The Wisconsin courts decided that O'Grady's behavior was harassing and not protected by the First Amendment. That finding was essential to the courts' issuance of injunctions against O'Grady. And there is nothing unfair about applying preclusion here to bar O'Grady's retaliation claims: O'Grady had a strong incentive to litigate the issue during the state court proceedings; the Wisconsin proceedings were not low in quality; defendants had the burden in the original proceedings; and O'Grady had the chance to seek review of the circuit courts' injunction orders.

Only defendant Oetzman's injunction petition was rejected by the state circuit court. But it is clear from a review of Oetzman's petition that he did not seek an injunction against O'Grady in retaliation for O'Grady's filing the '368 and '582 lawsuits or engaging in any other protected speech. Oetzman's injunction petition focuses on his personal interactions with O'Grady, and the petition alleges that O'Grady had been stalking and intimidating him at a local gym and acting in a threatening manner while attempting to serve papers on Oetzman. O'Grady develops no argument as to why Oetzman's injunction petition should be viewed as retaliatory, and no reasonable jury would conclude that it was.

Accordingly, all defendants are entitled to summary judgment on O'Grady's retaliation claims.

ORDER

IT IS ORDERED that:

1. Defendants' motions for summary judgment, Dkt. 227 and Dkt. 241 in 18-cv-368-jdp; Dkt. 143 and Dkt. 157 in 18-cv-582-jdp; Dkt. 62 and Dkt. 67 in 19-cv-515-jdp; Dkt. 194, Dkt. 200, Dkt. 206 in 19-cv-518-jdp, are GRANTED.

2. Plaintiff Michael O'Grady's motion to compel discovery from Mark Hazelbaker, Dkt. 175, and amended motion to compel discovery, Dkt. 182 in 19-cv-518-jdp, are DENIED.

3. O'Grady's motion to withhold judgment on defendants' motion for summary judgment, Dkt. 275 in 18-cv-368-jdp; Dkt. 191 in 18-cv-582-jdp; Dkt. 87 in 19-cv-515-jdp; and Dkt. 232 in 19-cv-518-jdp are DENIED.

4. The clerk of court is directed to enter judgment for defendants and close these cases.

Entered November 12, 2020.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge